In re Howard MATERETSKY, Debtor.

REL COMMERCIAL CORPORATION, Plaintiff,

v.

Howard MATERETSKY, Defendant.

Bankruptcy No. 81 B 12082 (EJR).

Adv. No. 82 5145–A.

United States Bankruptcy Court, S.D. New York.

March 17, 1983.

Stein, Davidoff, Malito, Katz & Hutcher, New York City, for plaintiff.

Alfred A. Rosenberg, Brooklyn, N.Y., for debtor.

### DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

EDWARD J. RYAN, Bankruptcy Judge.

This case comes before the Court on a complaint to determine dischargeability of a debt.

On October 16, 1981, plaintiff-creditor, REL Commercial Corporation ("REL") commenced an action against both Amis Drug Co. of 40th Ave., Inc. ("Amis") and its president, Howard Materetsky ("Materetsky"), who is a personal guarantor of monies owed by Amis to REL. Subsequently, on October 23, 1981, Materetsky filed a petition for relief under Chapter 7 of the Bankruptcy Code. Thereafter, REL continued its action by instituting this adversary proceeding by summons issued February 2, 1982.

REL alleges that Amis and Materetsky have defaulted on their obligations to REL and that such default was due to Materetsky's breach of a fiduciary duty, owed either to Amis or REL, or both. Plaintiff, therefore, asserts that the indebtedness arising from Materetsky's conduct should be excluded from discharge in bankruptcy, pursuant to 11 U.S.C. § 523(a)(4).

The court finds that the contested debt is dischargeable.

The undisputed facts are as follows. The defendant, Materetsky, was the president, a director, and a principal shareholder of Amis, a pharmacy located in Long Island City, New York. A major portion of Amis' business consisted of sales to clients of Medicaid. Payment for sales to Medicaid clients was made by the City of New York. Due to the City's lengthy delay in payment on Medicaid checks, Materetsky, acting as a corporate officer of Amis, negotiated an agreement whereby REL agreed to advance monies to Amis.

The agreement, entered into on November 30, 1976, specified that REL would from time to time lend Amis up to $2,200 in any particular week, the aggregate principal amount outstanding at any one time not to exceed $30,000; that REL would be repaid from time to time at a rate of 2 percent interest per month, as Amis collected its accounts receivable; that Amis would deliver to REL all checks collected in payment of Amis' receivables and would endorse such checks over to REL; and that REL would have a security interest in and upon all of Amis' then current and after-acquired accounts receivable.

The agreement further specified that the accounts receivable were to be part of the collateral to secure the loans made under the agreement and were not being sold, assigned or transferred to REL. The agreement made no specific mention of segregation of accounts, nor did it speak in terms of a trust relationship.

At the same time, Materetsky and another officer of Amis entered into a separate agreement with REL, whereby they personally guaranteed payment of any debts owed by Amis. According to the terms of the guaranty agreement, the cosignatories were to be jointly and severally liable.

Thereafter, the business of Amis suffered serious reversals, resulting in cash shortfalls. Consequently, on several occasions in June, 1978, Materetsky failed to make the required payments to REL from the Medicaid checks paid to Amis by the City of New York. Instead of endorsing the Medicaid

checks over to REL for payment, Materetsky used the checks to pay two of Amis' wholesaler suppliers, Rogers Wholesalers, Inc. and Reliance Wholesale. Materetsky testified that these payments were made because the wholesalers demanded cash on delivery and that without the necessary wholesale supplies Amis could not have continued in business. Thereafter, Amis ceased borrowing from REL.

Over the course of the following year, until Amis went out of business in August, 1979, no further payments were made to REL.

REL alleges that, of the approximately $150,000 loaned, it is still owed $72,572 from Amis. In support of its contention that Materetsky, as personal guarantor of this debt, should not be granted a discharge in bankruptcy, REL relies on 11 U.S.C. § 523(a)(4), which excepts from discharge of an individual debtor any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

▆ REL argues that, in diverting the monies owed to REL by Amis, Materetsky breached a fiduciary duty both to Amis and to REL.

While there is no question that Materetsky was contractually obligated to turn over to REL the monies received from the City of New York in order to satisfy Amis' debts to REL, case law demonstrates that his failure to do so does not constitute breach of a fiduciary duty within the meaning of section 523(a)(4). REL's argument is, therefore, unavailing.

At the outset, we note that exceptions to discharge have been narrowly construed in order to give effect to the underlying purpose of the Bankruptcy Code, which is to grant relief and a fresh start to overburdened debtors. *See Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Vickers,* 577 F.2d 683 (10th Cir.1978); *Davison-Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1940). The term "fiduciary capacity" has, therefore, been narrowly construed, limiting the scope of the exception relating

to breach of a fiduciary duty. *See Chapman v. Forsyth,* 2 How. (43 U.S.) 202, 11 L.Ed. 236 (1844) (holding that a factor who retains the money of his principal is not a fiduciary within the meaning of the bankruptcy laws).

In *Chapman,* the Court construed a similar provision of the Act of 1841,[1] observing that

"In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the act.

"The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied, but special trusts, and the 'other fiduciary capacity' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the laws implies from the contract. A factor is not, therefore, within the act."

*Id.* at 208. *See also Matter of Angelle,* 610 F.2d 1335 (5th Cir.1980) (contractor's misappropriation of funds, although a breach of the principal-agent relationship, was not held violative of any fiduciary duty).

Even where a debtor has specified that his debts shall be payable from an identified fund, courts tend to construe the transaction as creating a contractual obligation rather than a trust, or fiduciary, relationship. *See* G. Bogert, *The Law of Trusts and Trustees,* § 19 (2d ed. 1965); *Shiro v. Drew,* 174 F.Supp. 495 (D.Me.1959) (agreement by debtor to pay advances out of specified contract payments to be received by it does not constitute a declaration of trust for the benefit of creditor); *Meisinger v. Johnson,* 162 Neb. 360, 76 N.W.2d 267 (1956) (loan to be repaid out of first profits from land held to create mere contract relation, not a trust).

▆ Similarly, even where parties to a contract expressly characterize the contrac-

---

1. Section 1 of the Act of 1841 (5 Stat. 440) provided for the denial of discharge of debts "created in consequence of a defalcation as a public officer; or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity."

tual relationship as a trust, courts will look to the substance of the relationship rather than to the language chosen to express it, to determine whether a fiduciary relationship exists. Thus, Justice Cardozo observed, "It is not enough that by the very act of wrongdoing out of which the debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto." *David v. Aetna Acceptance Co.,* 293 U.S. 328, at 333, 55 S.Ct. 151, at 153, 79 L.Ed. 393 (1934) (holding that a mortgagor in possession is not a fiduciary of the mortgagee within the meaning of the Bankruptcy Act, even though the mortgagor has obligated himself to keep the security intact). *See also Bloomingdale v. Dreher,* 31 F.2d 93 (3d Cir. 1929) ("trust receipt," evidencing security for a transaction consisting of borrowing and lending money did not give rise to a fiduciary relationship so as to bar discharge of debt in bankruptcy); *In re Miles,* 5 B.R. 458 (Bkrtcy.E.D.Va.1980) (where the "magic words," "in trust" did not suffice to bring a financing agreement with a security interest in all the debtor's inventory, equipment and assets within the purview of a fiduciary relationship as contemplated by 11 U.S.C. § 523(a)(4)).

■ By contrast, statutorily imposed trust relationships give rise to the type of fiduciary status contemplated by the bankruptcy laws. *See, e.g., Matter of Kawczynski,* 442 F.Supp. 413 (W.D.N.Y.1977) (statutory trust imposed by New York Lien Law upon contractors was held to have created a fiduciary duty).

The case at bar involves neither an express technical trust, nor a statutory trust. Therefore, despite their contractual obligations to REL, neither Materetsky nor Amis owed a fiduciary duty to REL within the meaning of Bankruptcy Code section 523(a)(4).

Materetsky did not violate a fiduciary duty to REL within the meaning of the Bankruptcy Code.

■ Now we come next to plaintiff's contention that Materetsky violated his fiduciary duty to Amis. The resolution of this issue turns on whether plaintiff has shown that Materetsky's use of the Medicaid checks for purposes other than the payment of Amis' debt to REL constituted a fraud or defalcation against Amis. The term "fraud," as it is used in the Bankruptcy Code, refers to positive fraud, involving moral turpitude, and not implied fraud, or fraud in law. 3 *Collier on Bankruptcy,* ¶ 523.14[1][a] (15th ed. 1979).

In the instant case there has been neither allegation nor proof of any such fraud. The sole remaining question, therefore, is whether a defalcation has occurred.

■ Although Bankruptcy Code section 523(a)(4), unlike its predecessor provision under the Act of 1898,[2] former 11 U.S.C. § 35(a)(4), does not specify that debts arising from misappropriation by a fiduciary shall be excepted from discharge, the term "defalcation" subsumes misappropriation. 3 *Collier on Bankruptcy,* ¶ 523.14[1][b] (15th ed. 1979). A defalcation was held to have occurred, for example, when a court-appointed receiver spent the money allotted to him by the court for his services without waiting for the time to appeal from the court's order of settlement to expire. *See Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937).

■ Plaintiff's argument, however, rests on the contention that a misappropriation has occurred. In support of this contention, plaintiff relies on *John P. Maguire & Co. v. Herzog,* 421 F.2d 419 (5th Cir.1970). In *Maguire,* the court found that a "discernible pattern of payments" made to various creditors to whom the debtor was secondarily liable constituted a misappropriation within the meaning of former 11 U.S.C. § 35(a)(4). *Id.* at 421. Plaintiff's reliance on *Maguire,* however, is misplaced.

In the first instance, plaintiff concedes that Materetsky used the monies in ques-

**2.** The Bankruptcy Act of 1898 § 17(a)(4), former 11 U.S.C. § 35(a)(4), barred a debtor's discharge from debts which "were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity ...."

tion to pay Amis' usual corporate debts, including taxes and other expenditures. Plaintiff has not shown that Materetsky made any discernible pattern of payments to creditors to whom he would have been secondarily liable. On the contrary, with the exception of the payment of Amis' corporate taxes, Materetsky could have reduced his personal liability by paying Amis' debts to REL. Yet, in efforts to keep Amis in operation, Materetsky chose to make payments to several wholesalers to whom he was not personally liable. This pattern of conduct is quite different from that considered by the court in *Maguire.*

Moreover, plaintiff, like the court in *Maguire,* relies on *In re Bernard,* 87 F.2d 705 (2d Cir.1937), and *Ware v. Rankin,* 97 Ga. App. 837, 104 S.E.2d 555 (1958), cases which are readily distinguishable from the case at bar. In *In re Bernard, supra,* a corporate director and president, knowing his corporation to be insolvent, appropriated part of its assets to liquidate his own claims and that of his son, who was also an officer. 87 F.2d 705, at 707. The court held that such a misappropriation would bar discharge pursuant to former 11 U.S.C. § 35(a)(4) and specified that a transfer to an ordinary creditor would not have the same effect. *Id.* In *Ware v. Rankin, supra,* the court held that, under Georgia state law, where corporate directors of an insolvent company use their position to prefer themselves over others or engage in a scheme the purpose of which is to indemnify themselves against personal liability, such conduct is fraudulent. The court stated, however, that the test of whether such fraud exists is "the intent or purpose which induced the making of the payment or the giving of the security." 97 Ga.App. 837, 104 S.E.2d 555, at 559 (1958).

In a proceeding involving an objection to discharge the burden of proving that a debt comes within the statutory exception is upon the party opposing the discharge of the debt. *In re Danns,* 558 F.2d 114, at 116 (2d Cir.1977); *Matter of Falk of Bethlehem,* 3 B.R. 266, at 271 (Bkrtcy.D.N.J.1980).

Plaintiff has failed to demonstrate the existence of a fiduciary duty owed to it by Amis or Materetsky. Plaintiff has not disproved Materetsky's claim that his payments to various wholesalers were contemporaneous exchanges for value, made not for the purpose of self-indemnification against personal liability, but rather to maintain Amis in operation. Nor has plaintiff shown that Materetsky's use of the proceeds of Amis' receivables for the payment of Amis' corporate taxes amounted to a fraud or defalcation against Amis, the corporation on whose behalf such payments were made.

The plaintiff has not met its burden of proof in establishing the applicability of the exceptions to discharge provided for in Bankruptcy Code section 523(a)(4). Accordingly, judgment is hereby granted for the defendant.

It is so ordered.