In re Paul F. LIVINGSTON, d/b/a Livingston Associates, Debtor.

Paul F. LIVINGSTON, d/b/a Livingston Associates and Rose Livingston, his wife, jointly and severally, Plaintiff-Appellant,

v.

ZURICH INSURANCE COMPANY, Republic of Switzerland Corporation, Defendant-Appellee.

Bankruptcy No. 83–02337–G.

Adv. No. 83–1694.

84–CV–1473–DT.

United States District Court, E.D. Michigan, S.D.

July 30, 1984.

George Burnard, Merritt, Kwetcher & Burnard, Troy, Mich., for plaintiff-appellant.

Daniel E. Patt, Harnish & Patt, Southfield, Mich., for defendant-appellee.

## MEMORANDUM OPINION

JOHN FEIKENS, Chief Judge.

Debtor, Paul Livingston, brings this appeal from a judgment entered on March 19, 1984, in favor of Zurich Insurance Company. Appellant challenges Judge Graves' finding that he committed a defalcation under 11 U.S.C. § 523(a)(4). For reasons stated herein, the decision of the Bankruptcy Court is affirmed.

### I. BACKGROUND

Appellant, Paul Livingston, was a licensed insurance agent for a number of companies including Appellee, Zurich Insurance Company. The parties executed an Agency-Company Agreement in March, 1980, which provides in part that "[a]ll premiums collected by the agent are the property of the Company and are to be held by him as trust funds." Appellant maintained a Premium Account into which premiums from all insurance companies were deposited, and from which the insurance companies were paid and Livingston drew commissions. On May 12, 1983, the date Livingston filed a petition under Chapter 7 of the Bankruptcy Code, there was in excess of $30,000 in the Premium Account which was turned over to the trustees for payment to the various insurance companies. Zurich contends, and Judge Graves found, that Livingston owed Zurich $55,728.72, and that this debt is non-dischargeable because Livingston committed a defalcation with respect to these funds.

### II. DISCUSSION

Rule 8013 of the Bankruptcy Rules provides in part that, on appeal to the District Court, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the bankruptcy court to judge the credibility of the witnesses." The decisional law is equally clear on this point. In *McDowell v. John Deere Industrial Equipment Co.,*

461 F.2d 48, 50 (6th Cir.1972), the United States Court of Appeals for the Sixth Circuit held that "the District Judge should not disturb the findings of fact of a Referee in Bankruptcy unless there is most cogent evidence of mistake or miscarriage of justice." The Court went on to say that "the question before us is whether or not there is substantial evidence to support the Referee's conclusion.... [This] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See also Bank Creditors Group v. Hamill*, 27 B.R. 554, 556 (N.D. Oh.1982) ("If the Bankruptcy Court had a reasonable basis for its findings of fact, a reviewing court cannot reject the findings and substitute its own, simply to achieve what the reviewing court may regard as a more desirable result."). Accordingly, I must affirm Judge Graves' findings of fact unless they are clearly erroneous.

■■■ The question before Judge Graves was whether the debtor committed a defalcation under 11 U.S.C. § 523(a)(4). That section provides that "(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The elements of defalcation are: 1) The debtor is in a fiduciary relationship with the plaintiff; 2) Money belonging to plaintiff came into the hands of the debtor; and 3) Debtor used or misappropriated this money without first retiring his debt to plaintiff. Contrary to Appellant's assertions, I find that there is sufficient evidence in the record to support Judge Graves' conclusion that Livingston committed a defalcation.

First, there was evidence to support the conclusion that the parties stood in a trust or fiduciary relationship. Appellant asserts that the use of "trust" language in the contract is insufficient to create a trust, and since he did not segregate Zurich's funds, no trust was created. *See Air Traffic Conference of America v. Paley*, 8 B.R. 466 (Bankr., E.D.N.Y.1981) (no trust created where a travel agent did not segregate funds collected for air carriers, even though the contract required the travel

agent to hold these funds "in trust"). Appellant's view of the segregation requirement, however, is much too narrow. In this case, Zurich's premiums were not commingled with Livingston's general business funds; rather, they were segregated into the Premium Account. The Zurich premiums did not lose their identity as segregated trust funds merely because other premiums were also kept in this account. Moreover, the cases suggest that an insurance agent is a fiduciary of an insurance company. *See Union Mutual Life Insurance v. Murphy*, 9 B.R. 167, 173 (Bankr., E.D.Va. 1981) ("It is well established that a fiduciary relationship will be imposed when the individual insurance agent enters into an explicit agreement with the insurance company wherein as express trust relationship is contemplated as between the parties."); *Union Retailers of Easton v. Falk of Bethlehem*, 3 B.R. 266, 270 (Bankr.D.N.J. 1980) ("[C]ourts have viewed insurance agents as fiduciaries within the purview of section [523(a)(4)].")

I am also persuaded that a fiduciary relationship existed between the parties based on M.C.L.A. § 500.1207(1). That section provides: "An agent shall be a fiduciary for all moneys received or held by him in his capacity as an agent. Failure by an agent ... to turn over the moneys which he holds in a fiduciary capacity ... is prima facie evidence of violation of the agent's fiduciary responsibility." Fiduciary duties imposed by statutes such as M.C.L.A. § 500.1207(1) create the sort of fiduciary relationship contemplated by the defalcation provision of the Bankruptcy laws. *See Carlisle Cashway v. Johnson*, 691 F.2d 249 (6th Cir.1982) (A state statute imposing a trust on builders "satisfies the express or technical trust requirements of 17(a)(4) [predecessor of 523(a)(4)]."); *Ford Motor Credit Co. v. Talcott*, 29 B.R. 874, 878 (Bankr., D.Kan.1983) ("Courts will find the requisite express or technical trust when a state statute defines the relationship as a trust ..."); *REL Commercial Corp. v. Materetsky*, 28 B.R. 499, 502 (Bankr., S.D. N.Y.1983) ("statutorily imposed trust relationships give rise to the type of fiduciary

status contemplated by the bankruptcy laws.") Accordingly, I find that Judge Graves applied the law correctly in this case, and that the record supports the conclusion that a trust or fiduciary relationship existed between the parties.

Second, Appellant challenges Judge Graves' finding that Livingston collected the Zurich premiums in question, and used this money for other purposes. Here too, the evidence offered at trial supports the findings below. Mr. Fischer, Zurich's credit manager, testified that when he asked Appellant where Zurich's money was, Appellant replied "that he had used the funds to cover [another] operation." (Tr. 26). Mr. Fischer also testified that he had copies of 200 checks proving that Appellant had received premiums from Zurich policyholders. In fact, Livingston signed a promissory note to Zurich for the amount Zurich claims it is owed. Finally, Judge Graves found that "Mr. Livingston's credibility on a number of major issues is woefully lacking." (Tr. 79). In short, there is abundant evidence in the record to support the finding that Appellant received the funds in question and used them for a purpose other than retiring his debt to Zurich.

## III. CONCLUSION

I find that Judge Graves correctly applied the law in this case, and that his findings of fact were not clearly erroneous. Accordingly, IT IS HEREBY ORDERED, that the judgment of the Bankruptcy Court is AFFIRMED.