**In re Richard FRANKEL, Debtor.**

**Edward FRANKEL, Plaintiff,**

**v.**

**Richard FRANKEL, Defendant.**

**Bankruptcy Nos. 82–20086, 84–2083A.**

United States Bankruptcy Court,
W.D. New York.

Sept. 9, 1987.

402

Warren H. Heilbronner, Rochester, N.Y., for plaintiff.

Douglas Jones, Rochester, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This is an application to have a debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). The issue is whether an officer of a corporate debtor-in-possession, who authorizes the sale of secured inventory to an entity that uses the sale price as offset against the corporation, incurs a debt to the secured creditor that is non-dischargeable in the officer's personal bankruptcy.

The facts are these. The Plaintiff, Edward Frankel, and the Debtor, Richard Frankel, are brothers who owned and operated a fiber recycling business, Frankel Brothers and Company, Inc. (the "Corporation"). In 1980, the Plaintiff sold his interest in the business back to the Corporation and received a note for $188,335.00. The note was secured by the inventory and accounts receivable of the Corporation and was also guaranteed by the Debtor. It is this guarantee which forms the basis of the Plaintiff's claim against the Debtor.

On January 25, 1982, the Corporation and the Debtor each filed for relief under Chapter 11 of the Bankruptcy Code.[1] Thereafter, the Debtor attempted to reorganize the failing Corporation. In furtherance of the reorganization attempt, the Corporation made purchases on credit from J. Eisenberg & Son, Inc. ("Eisenberg"). These credit purchases, made between February 4th and May 13th of 1982, generated an administrative claim in favor of Eisenberg amounting to $19,872.66.

---

1. Both cases have since been converted to Chapter 7.

Despite the Debtor's efforts, the prospects of reorganizing the Corporation soured and a decision to liquidate was made in early June of 1982. On June 15, 1982, a liquidation agreement was executed by the Debtor, acting in behalf of the Corporation, and the Plaintiff. The agreement chiefly provided for the mechanics of liquidating the inventory and accounts in which the Plaintiff was secured. The agreement also required the Debtor to obtain the Plaintiff's consent prior to authorizing the credit sale of secured inventory.

In the course of liquidating, secured inventory worth $9,813.03 was sold to Eisenberg on credit. It is undisputed that the Debtor did not obtain the Plaintiff's consent prior to authorizing the sale. Later, when collection of this receivable was attempted, the Plaintiff discovered that Eisenberg had set off the indebtedness against its administrative claim. The Plaintiff alleges that the Debtor, as chief operating officer of the Corporation, authorized the sale of secured inventory to an entity which he knew, or should have known, would set off its indebtedness. By so doing he deprived the Plaintiff of valuable security, thereby breaching a fiduciary duty as contemplated by 11 U.S.C. § 523(a)(4). Accordingly, the Plaintiff seeks to have excepted from discharge so much of his claim as equals the value ($9,813.03) of the security which he was deprived of.

Section 523(a)(4) of the Code states:
Exceptions to discharge.
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . . .

11 U.S.C. § 523(a)(4).
The question raised on the facts of this case, whether the Debtor's conduct constituted "defalcation while acting in a fiduciary capacity," can be divided into two parts. First, was the Debtor dutybound to the Plaintiff as a fiduciary? Second, if dutybound as a fiduciary, was the complained of conduct a "defalcation" under the statute?

Neither the Bankruptcy Code nor its forerunners define the term "fiduciary." The Supreme Court has several times given meaning to that term in the bankruptcy context. In the seminal case of *Chapman v. Forsyth*, 43 U.S. 202, 2 How. 202, 11 L.Ed. 236 (1844), the Court determined that a predecessor statute to 11 U.S.C. § 523(a)(4) was applicable only where obligations had arisen from the fiduciary bonds created under a pre-existing "technical trust[ ]," and not "where the law implies an obligation from the trust reposed in a debtor." 43 U.S. 202, 208, 2 How. 202, 208. In the more contemporary case of *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the distinction between pre-existing technical trusts and trusts implied from the relations of individuals was explained as follows:

It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto.

293 U.S. 328, 333, 55 S.Ct. 151, 154; *Accord, Matter of Banister*, 737 F.2d 225, 228 (2nd Cir.1984).

■ Technical trusts, giving rise to fiduciary obligations whose defalcation may result in the creation of non-dischargeable debts, have their genesis in express agreements or statutes. *In re Kawczynski*, 442 F.Supp. 413, 417 (W.D.N.Y.1977). Here, neither the Debtor's guarantee of the corporate obligation, nor the terms of the June 15th liquidation agreement, transformed this debtor-creditor relationship into an express trust. Therefore, whether the Debtor was a fiduciary of the Plaintiff must depend on statute.

■ Under 11 U.S.C. § 1107, the Corporation was permitted to operate the business as a debtor-in-possession during the pendency of the bankruptcy proceeding. As debtor-in-possession, it wore "the shoes

of a trustee in every way." H.R.Rep. No. 595, 95th Cong., 1st Sess. 404 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5902, 6360. The Debtor, as chief operating officer, was responsible for executing the fiduciary obligations of the Corporation. *Wolf v. Weinstein,* 372 U.S. 633, 649, 650, 83 S.Ct. 969, 979, 980, 10 L.Ed.2d 33 (1963). The most important obligation of the Corporation was one of loyalty to its creditors. 5 Collier on Bankruptcy ¶ 1106.01[b] (15th Ed.1986). In executing that obligation, the Debtor was duty-bound to exercise the quantum of care that a person of ordinary intelligence and prudence would exercise. *In re Roblin Industries, Inc.,* 52 B.R. 241 (Bkrtcy.W.D.N.Y. 1985); *In re Cochise College Park, Inc.,* 703 F.2d 1339 (9th Cir.1983). A breach of that duty, whether knowing or negligent, could result in liability attaching. *In re Gorski,* 766 F.2d 723, 727 (2nd Cir.1985).

■ Here, the Debtor authorized credit purchases from Eisenberg during the pendency of the reorganization effort. Later, when hope of reorganizing faded, the Debtor authorized credit sales of secured inventory to Eisenberg, and did so without obtaining the Plaintiff's prior consent. The Record reveals that the Debtor was aware of the Corporation's post-petition indebtedness to Eisenberg at the time he authorized the credit sales. (Transcript at 48). The Record further reveals that the Debtor was familiar with the commercial practice of offsetting mutual indebtedness, but believed that Eisenberg would not do so. (Transcript at 48–49).

To assert that a person of ordinary prudence and intelligence, armed with the Debtor's knowledge of commercial practice, would have sold secured inventory to Eisenberg on credit strains credulity. The Debtor knew, or should have known, that by making a credit sale to Eisenberg as the affairs of the Corporation were winding down he would place the Plaintiff's security at risk. This he should not have done.

Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions [Citation omitted]. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.

*Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545 (1928) (Cardozo, J.).

The Debtor's conduct did not comport with the standard of ordinary prudence incumbent upon a fiduciary. By his defalcation he deprived the Plaintiff of valuable security. Accordingly, the Plaintiff's application to have excepted from discharge so much of his claim as equals the value of the security which he has been deprived of is granted and it is so ordered.