**In re Rosario CATALANO, Mary Ann Catalano, Debtors.**

**UNIVERSITY ORTHOPAEDIC ASSOCIATES OF ROCHESTER, P.C. Plaintiff,**

v.

**Rosario CATALANO, Mary Ann Catalano, Defendants.**

**Bankruptcy No. 88–21435.**
**Adv. No. 88–2067.**

United States Bankruptcy Court, W.D. New York.

April 21, 1989.

---

Andrew W. Conway, Rochester, N.Y., for plaintiff.

Leonard Relin, Rochester, N.Y., for the defendants.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtors, Rosario and Mary Ann Catalano, filed a petition under Chapter 7 of the Bankruptcy Code on September 25, 1988. On November 9, 1988, University Orthopaedic Associates of Rochester, P.C. ("the Associates") brought a complaint objecting to the discharge of their claim for $2,919.25. An answer was filed and a trial date set. Prior to trial the matter was submitted for decision on the parties' memoranda.

The contested claim was for medical services the Associates rendered to the debtors' minor son, David Catalano, on or about October 25, 1985 while he was admitted to Strong Memorial Hospital in Rochester. On the admission date, October 23, 1985, Mary Ann Catalano signed a Strong Memorial Hospital Patient Admission Agreement, which included the following provision: "ASSIGNMENT OF BENEFITS: I assign to Strong Memorial Hospital all hospital and medical benefits payable by third party insurance for the cost of care and treatment of the above patient."

The Associates originally billed the Catalanos for $3,586.25. The Catalanos submitted a claim to Blue Cross and Blue Shield, for which they received a $2,590.60 check in January, 1986. They negotiated the check, but did not remit the insurance proceeds to the Associates, which alleged default is the basis for this action. By the time of their bankruptcy, the Catalanos had made one or more payments to the Associates, but they still owed $2,919.25.

The Associates' complaint alleges that the Catalanos' debt to them is excepted from discharge under § 523(a)(4) of the Bankruptcy Code, which provides that a debtor is not discharged under § 727 from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[1] 11 U.S.C. § 523(a)(4). In their memorandum of law the Associates argue that the Catalanos held the insurance proceeds in a constructive trust to the extent of their debt to the Associates, so that the default occurred while the Catalanos were acting in a fiduciary capacity. This matter, as the Associates expressly recognize, turns on whether the Catalanos breached a fiduciary duty by failing to apply the insurance proceeds to their debt to the Associates.[2]

The law governing the Associates' objection is extremely well-settled. For more than a century, the dischargeability provision of § 523(a)(4) and its predecessors has been construed narrowly, *In re Gans,* 75 B.R. 474, 488 (Bankr.S.D.N.Y. 1987), to enforce the fundamental bankruptcy policy of assuring a debtor's fresh start. *In re Materetsky,* 28 B.R. 499, 501 (Bankr.S.D.N.Y.1983). The objectant must prove a *prima facie* case of non-dischargeability under § 523 before the debtor is called upon to produce evidence to support

1. The complaint alleges "wilful and malicious misappropriation" amounting to "an intentional conversion", but prays for relief only under § 523(a)(4). The Associates' memorandum of law relies upon "defalcation while acting in a fiduciary capacity" as the sole ground for their objection to discharge.

2. The Associates argue only that the Catalanos had a fiduciary duty to *them.* They understandably do not discuss, nor does this decision reach, the questions of whether the Catalanos had a fiduciary duty to remit the insurance proceeds to Strong Memorial Hospital, or whether that duty was breached. No facts were presented as to the Catalanos' actual disposition of the insurance proceeds.

discharge. *Carini v. Matera,* 592 F.2d 378, 380 (7th Cir.1979).

As this court, among others, has observed, the term "fiduciary" is not defined in the Bankruptcy Code or in prior bankruptcy law. *In re Frankel,* 77 B.R. 401, 403 (Bankr.W.D.N.Y.1987). However, the term has long been construed narrowly in the bankruptcy context, *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844), in order that it not shield debts in ordinary commercial relationships from discharge. *In re Levitan,* 46 B.R. 380, 386 (Bankr.E.D.N.Y.1985).

In *Davis v. Aetna Acceptance Co.,* the United States Supreme Court reiterated the strict policy that, for determining dischargeability in bankruptcy, fiduciary responsibility arises only from technical trusts, not from trusts implied in law. 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). Technical trusts are express trusts, trusts created by an agreement between the parties to impose a trust relationship.[3] *Levitan,* 46 B.R. at 384. The trust must have been in existence prior to the default. As Justice Cardozo wrote, "It is not enough that by the very act of wrongdoing out of which the debt arose, the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong and without reference thereto." *Davis v. Aetna* at 333, 55 S.Ct. at 154.

In the instant matter, the Associates allege only a constructive trust, arising due to the assignment of benefits provision in the Patient Admission Agreement. In determining fiduciary capacity, however, "the Code does not reach constructive trust[ ]s". *In re Long,* 774 F.2d 875, 878 (8th Cir.1985). The Associates offer no evidence of any express trust, in existence prior to the alleged default, from which a fiduciary duty cognizable under the Bankruptcy Code might have arisen. Moreover, the Associates fail to explain how a trust in their favor could arise from the assignment of benefits provision, which neither names the Associates as potential assignees nor

creates an agency in Strong Memorial Hospital.

The Associates' reliance upon *In re Moskowitz* is misplaced. 14 B.R. 677 (Bankr.S. D.N.Y.1981). The issue in that case was whether insurance proceeds paid by an insurer directly to the assignee hospital within three months of the bankruptcy petition were property of the estate pursuant to § 541, so as to be recoverable by the trustee as a voidable preference. At no time did the debtors in *Moskowitz* have possession of the insurance proceeds, so no trust, constructive or otherwise, was involved and no question of fiduciary capacity was decided.

The Associates have failed to establish a *prima facie* case that the Catalanos' debt to them is nondischargeable under § 523(a)(4). In the absence of an express trust, the Catalanos had no fiduciary duty to the Associates, only a debtor's duty to a creditor. Accordingly, their defalcation does not come under § 523(a)(4) so as to except their debt to the Associates from discharge.

The debtors are entitled to a discharge of their debt to the Associates.

---

**3.** Technical trusts satisfying the strict bankruptcy requirements for fiduciary relationships may also be created by statute. *See, e.g., In re Kaw-* *czynski,* 442 F.Supp. 413 (Bankr.W.D.N.Y.1977) (trust imposed by New York Lien Law gives rise to fiduciary relationship).