948 F.2d 1281
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re Calvin Roy KELLEY and Delores Bayersdorfer Kelley, Debtors.
Carol H. BRADLEY, personally and as executrix for the estate
of Thomas B. Bradley; Pauline Bradley; Oliver F. Bradshaw;
Sandra M. Bradshaw; James F. Bunch; Mary F. Bunch;
Nelson C. Crumpler; Evelyn C. Crumpler; Mary G. Foster
Eller; Bernadine M. Foster; Helen W. Foster; Ralph E.
Hart; Beverly J. Heafner, Trustee for John Frankos; Renee
Hebrony; Julie Frankel; Sheila Prince; Evan R. Hunt, Sr.;
Annabel Alexander; Mary D. Kunkle; Lankford Malbone;
Jeanette W. Malbone; Salvatore Musarra, Jr.; Mildred B.
Pitts; Cameron C. Pitts; Marianna C. Sumner; Margaret B.
Dixon; Julia D. Fischer; Genevieve M. Galliford; W.T.H.
Galliford, Jr.; John C. Ivins; Arthur A. Kirk; J. Stokes
Kirk, trustee of a testamentary trust for the benefit of
Arthur A. Kirk; Wilton E. Mount; Linwood W. Parker;
Mildred L. Parker; W.A. Stallings; Mary Stallings and
Margaret Lee, Plaintiffs-Appellants,
v.
Calvin Roy KELLEY, Defendant-Appellee.
 No. 91-2055.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 2, 1991.
Decided Nov. 27, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CA-90-1926-N)
 Argued: James Lawrence Pedigo, Jr., Alexander P. Smith and Associates, P.C., Norfolk, Va., for appellants; Peter Stevenson Lake, Heilig, McKenry, Fraim & Lollar, P.C., Norfolk, Va., for appellee.
 On Brief: Alexander P. Smith, Alexander P. Smith and Associates, P.C., Norfolk, Va., for appellants; Charles M. Lollar, Heilig, McKenry, Fraim & Lollar, P.C., Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and SPROUSE, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The question presented in this bankruptcy case is whether a group of security holders are entitled to a determination that alleged debts of Calvin Roy Kelley are non-dischargeable under 11 U.S.C. § 523(a)(4).[1] The bankruptcy and district courts held that the security holders had not met the requirements of 523(a)(4). We agree and affirm.
 
 
 2
 * In 1978 the Appellants purchased securities executed by the Tusing Finance Co. Inc. (Tusing), a small loan company licensed to do business in Virginia. The interest-bearing securities contained an "automatic rollover provision." This feature allowed the maturity date of each security to rollover automatically to a new date if the payee did not redeem the security. In 1985 poor economic conditions caused Tusing to surrender its license to operate as a small loan company. The security holders did not receive notice of this event. In spite of Tusing's surrender of its license, the security holders continued to receive interest payments on their securities through 1989 and the securities continued to rollover automatically.
 
 
 3
 On May 31, 1989, Tusing sought relief under Chapter 7 of the Bankruptcy Code. Soon after, the parent corporations of Tusing filed under Chapter 11 for bankruptcy protection. These were Asset Financing Corporation, which owned Tusing, and U.S. Credit Group, Inc., which in turn owned Asset Financing Corporation. At roughly the same time, Appellee Calvin Roy Kelley sought Chapter 11 relief. Kelley was the 82.5% owner of U.S. Credit Group and an officer and director of Asset Financing Corporation. Kelley also was an officer and director of Tusing, though he did not occupy these positions with Tusing at the time Tusing surrendered its license in 1985.
 
 
 4
 The security holders filed an action against Kelley in bankruptcy court. They contended that the debts represented by the Tusing securities were in truth owed by Kelley and should not be discharged as to him because he had defrauded them while acting in a fiduciary capacity. Under Virginia law,[2] they claimed, Kelley was a "controlling person" at the time Tusing surrendered its license and, as such, had a duty to notify the security holders of this material fact. His failure to do so, they continued, rendered him personally liable on the securities under the relevant Virginia statute. Relying on this theory of liability, the security holders sought to make these debts non-dischargeable as to Kelley under 11 U.S.C. § 523(a)(4).
 
 
 5
 The bankruptcy court directed a verdict for Kelley, rejecting the claim that the debts were non-dischargeable. The district court affirmed.
 
 II
 
 6
 At the outset it bears note that the issue in this case is not whether the debt allegedly created by Virginia's "controlling person" statute is a valid one. Rather, it is whether that debt, however uncertain, may be discharged. Debts that may be discharged under section 523 "include all legal obligations of the debtor, no matter how remote or contingent." 3 Collier on Bankruptcy, § 523.04, at 523-12 (15th ed. 1991).
 
 
 7
 Section 523(a)(4) excepts from discharge those debts "for fraud or defalcation" committed by one "acting in a fiduciary capacity." To prevail under this provision, the security holders must make a twopart showing. They must establish that Kelley was acting in a fiduciary capacity. And they must show that while acting in that capacity he committed a fraud or defalcation.
 
 
 8
 Turning first to the question of fiduciary status, we note that the term "fiduciary" has been "strictly construed" in the context of dischargeability of debt determinations under 11 U.S.C. § 523(a)(4). In re Duiser, 12 B.R. 538, 539 (W.D.Va.1981). The necessary relationship must arise from a preexisting express or technical trust.[3] In re Murphy, 9 B.R. 167, 173 (E.D.Va.1981). That is, "[i]t is not enough that by the very [alleged] act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934). See also 3 Collier on Bankruptcy, § 523.14[c], at 523-10612 (15th ed. 1991).
 
 
 9
 The security holders argue that a state statute may create the requisite relationship, relying on In re Johnson, 691 F.2d 249 (6th Cir.1982). See also In re Lipke, 54 B.R. 704, 706 (W.D.Wis.1985). In Johnson a contractor diverted building contract payments that were intended to go to a supplier. A Michigan statute[4] expressly imposed a trust on funds paid to a contractor for building construction purposes. The statute defined the trust res as the monies paid into the "building contract fund,"[5] and it charged the trustee with specific affirmative duties. The court concluded that since the Michigan statute defined a res, established fiduciary duties, and imposed a trust on the funds upon receipt, it created the necessary trust relationship under § 523(a)(4). Id. at 253.
 
 
 10
 Relying on Johnson, the security holders contend that Virginia's "controlling person" statute, Va.Code Ann. § 13.1-522, likewise created the requisite relationship between Kelley and the security holders. We disagree. Johnson involved a far different statute from the one at issue in this case. Section 13.1-522 states in pertinent part:
 
 
 11
 Every person who directly or indirectly controls a person liable [for selling a security by means of "any omission to state a material fact necessary in order to make the statement ... not misleading"], including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every broker-dealer, investment advisor, investment advisor representative or agent who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person.
 
 
 12
 The Virginia statute, to be sure, creates civil liabilities. Yet it does not define a trust res or impose trust responsibilities. Accordingly the Virginia statute, unlike the Michigan statute in Johnson, did not subject Kelley to an express trust.
 
 
 13
 Nor did Kelley's various positions with Tusing, Asset Financing, or U.S. Credit Group create the necessary relationship between him and the security holders. First, and most importantly, Kelley was neither an officer nor a director of Tusing in 1985, the year Tusing surrendered its license. Second, though Kelley was a majority shareholder of U.S. Credit Group in 1985, that corporation did not acquire its interest in Tusing until 1986--after Tusing had surrendered its license. Third, Kelley's directorship with Asset Financing in 1985 did not create the requisite relationship between him and Tusing's creditors. Because Asset Financing was a separate legal entity, we would have to disregard the distinct corporate forms of the two entities in order to render Kelley a fiduciary as to the security holders on the basis of Kelley's position with Asset Financing. Yet the security holders provide no precedential support or traditional justification, beyond expedience, for so eradicating the limited liability provided by the corporate form.
 
 
 14
 The security holders further argue that even if Kelley was not a fiduciary in 1985, he became one in later years as an officer and director of Tusing from 1986 to 1989. During these later years, they claim, Kelley acquired a duty to disclose Tusing's earlier surrender of its license. This relation-back theory of fiduciary status would create a broad expansion of director liability, one lacking both the force of a convincing rationale and the support of precedent. The argument was properly rejected by the district court.
 
 
 15
 As we agree with the lower courts' determinations regarding the fiduciary requirement of § 523(a)(4), and as the two-part test is a conjunctive one, we will consider briefly the security holder's allegation that Kelly committed a fraud or defalcation. If indeed Kelley had owed a fiduciary duty to the security holders, his failure to disclose Tusing's surrender of its license may well have constituted a breach of that duty. Evidence of such a breach, however, would not necessarily have established that Kelley committed a fraud or defalcation.
 
 
 16
 For purposes of § 523(a)(4), "fraud," the parties agree, means actual fraud involving moral turpitude or an intentional wrong; implied fraud is not sufficient. See Neal v. Clark, 95 U.S. 704, 709 (1878) (construing § 17a(4) of the Bankruptcy Act of 1867, the forerunner of § 523(a)(4)). See also 3 Collier on Bankruptcy, § 523.14[a], at 523-102-03 (15th ed. 1991). The record provides no basis for inferring that Kelley intentionally concealed information of Tusing's surrender of its license from the security holders.
 
 
 17
 A defalcation involves a misuse or misappropriation of funds by a fiduciary. In re Weber, 99 B.R. 1001, 1012-13 (D.Utah 1989); In re Livingston, 40 B.R. 1018, 1019 (E.D.Mich.1984). See also 3 Collier on Bankruptcy, § 523.14[b], at 523-103-05 (15th ed. 1991). There is no substantial evidence supporting this claim. The security holders fail to offer anything more than speculative arguments (i.e., "Now the question arises to what use were those funds put?") that Kelley misspent or misappropriated their money.
 
 
 18
 Accordingly, the judgment of the district court is affirmed.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Section 523(a)(4) excepts from discharge an individual's debts "for fraud or defalcation while acting in a fiduciary capacity."
 
 
 [2]
 Va.Code Ann. § 13.1-522
 
 
 [3]
 A technical trust is created by express terms and for specific purposes; in contrast, a constructive trust "arises by implication of law or the demands of equity." Black's Law Dictionary 1511 (6th ed. 1990)
 
 
 [4]
 Michigan Building Contract Fund Act, Mich.Comp.Laws Ann. §§ 570.151-153
 
 
 [5]
 Section 570.151 provides:
 In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.